UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

==============================================
                                                            )
In re:                                                      ) Chapter 13
    NATHAN W. CANTO,                            ) No. 12-10595–WCH
                    Debtor            )
                                                            )
==============================================

DECISION ON OBJECTIONS TO DEBTOR'S
CLAIM OF HOMESTEAD EXEMPTION AND
DEBTOR'S MOTION TO AVOID JUDICIAL LIENS

Nathan W. Canto ("Debtor") filed this Chapter 13 case on January 26, 2012. He listed on Schedule A-Real Property a surplus of $162,682.26 (the "Surplus") from a foreclosure sale of certain real estate formerly owned by him.[1] On Schedule C-Property Claimed as Exempt, he claimed an exemption in the entire Surplus pursuant to M.G.L. c. 188, §1.[2]

Several things followed from the claim of exemption. First, Debtor moved "To Avoid the Judicial Liens of Baralee Regeana Murphy, Lance R. Murphy, and Ruedee L. Murphy as Impairing His Homestead Exemption and To Award the Foreclosure Sale proceeds to the Debtor" (the "Motion").[3] Then Lance and Ruedee Murphy (the "Murphys") objected to Debtor's claim of exemption in the Surplus (the "Murphy Objection").[4] This was followed by the Chapter 13 Trustee's objection to the same claim

---

[1] This entry was corrected by amendment to place the asset on Schedule B. Docket No. 54.
[2] A second amendment corrected the statutory citation to "§§ 11 and/or 12" of M.G.L. c. 188. Docket No. 54.
[3] Docket No. 22.
[4] Docket No. 28.

1

of exemption (the "Trustee's Objection").[5]  I combined hearings on all three matters and took them all under advisement.[6]

*Background and Findings of Fact*

The issues before me will be clarified if I take two or three giant steps backward into the origin of the disputes.  There are no material facts in dispute and the following discussion is drawn from the undisputed pleadings.

Once upon a time, Debtor and Baralee Regeana Murphy ("Baralee") were married.  By various deeds executed and recorded in 2003, they acquired title to certain property in South Chatham, Massachusetts (the "Property"), as tenants by the entirety.  In 2005, Debtor and Baralee granted a mortgage to The Cape Cod Five Cents Savings Bank (the "Bank").

Debtor and Baralee were subsequently divorced.  The Amended Judgment of Divorce Nisi[7] (the "Divorce Decree") provided in part:

> The Wife [Baralee] shall forthwith sign over her interest in the former marital home [the Property] to the Husband [Debtor].  The Husband shall be solely responsible for any loans and mortgages regarding the property, and he shall be solely responsible for servicing and negotiating any debt due the Wife's parents.  In consideration of the foregoing, the Husband shall pay to the Wife a sum of money, but this sum shall not be due and payable to the Wife until May 1, 2015.  This sum of money shall be determined by taking the present fair market value of the home ($710,000) and subtracting the present mortgage balance on the home ($216,700), which results in the figure of $493,300.  To be further subtracted from this figure of $493,300 shall be whatever sum of money is paid by the Husband to the Wife's parents which satisfies in full what is owned to them.  This figure shall be reflected on a release which the Husband may obtain from the parents.  After subtracting the figure from the $493,300, the resulting figure shall be divided in half and the Husband shall pay to the Wife her one-half at that time, without interest.

---

[5] Docket No. 33.  After the amendment, the Trustee filed a similar objection to the amended claim.  Docket No. 68.
[6] Docket Nos. 56, 57 and 58.
[7] Found at Exhibit D to the Motion.

Baralee quitclaimed her interest in the Property to Debtor by deed dated September 24, 2010, which was recorded on October 18, 2010.[8]

Debtor executed a declaration of homestead on April 20, 2011, which was recorded two days later.[9]  The Murphys brought suit against Debtor in the Superior Court for Barnstable County and obtained an attachment against him in the amount of $240,000, which was served on May 17, 2011 (the "Attachment").[10]

On June 2, 2011, the Bank foreclosed the mortgage and the Property was purchased by the Murphys for $401,000.[11]  The sale price far exceeded the balance due on the mortgage and the Bank brought an interpleader action in the Superior Court asking for instructions as to the disposition of the Surplus as between the Debtor, Baralee, and the Murphys.  This action remains pending.

### Positions of the Parties

*The Debtor*

In the Motion, Debtor seeks to avoid two judicial liens.  The first is the Attachment.  The second arises from the recording of the Divorce Decree (quoted in part above) by Baralee.  Debtor asserts an exemption in the Surplus pursuant to M.G.L. c. 188, § 11 in the amount of $500,000.

*The Murphys*

After pointing out the errors in citations which Debtor subsequently corrected,[12] the Murphys assert that Debtor is not entitled to claim a homestead exemption in the

---

[8] All of the deeds appear on Exhibit A to the Motion.
[9] Exhibit B to the Motion.  (The revision of Chapter 188 of the General Laws became effective March 16, 2011, and so controls all of the discussion which follows.)
[10] A copy of the writ appears in Exhibit D to the Motion.
[11] The foreclosure documents appear at Exhibit C to the Motion.
[12] *See* footnotes 1 and 2.

3

Surplus because of the wording of § 11(a), which, they contend limits the exemption on the proceeds of a sale to amounts *received* on account of such sale. Because the Surplus is tied up in the pending Superior Court action, the Surplus has not been received by the Debtor, which they argue precludes the Debtor's claim of exemption.

Next they contend that Debtor is not entitled to claim an exemption in the Surplus because it is not property of the estate; "while it might appear that Debtor's claim to the Surplus is theoretically includable as property of the estate under Section 541(a)(1), Section 541(d) specifically excludes this Surplus."

Finally they assert that any exemption which Debtor may claim is limited to $125,000 by Section 522(p),[13] since he acquired his interest in the Surplus, if any, by virtue of the entry of the Divorce Decree, which was only 634 days before the date of filing.

*The Trustee*

The Trustee points to the one year limitation which appears in M.G.L. c. 188, §11(a)(1), and asserts that "[b]ecause the foreclosure took place in June of 2011 and the Debtor has not used the surplus funds to purchase a new home he intends to occupy as a principal residence . . . the Debtor's right to claim an exemption in the funds will terminate upon the end of the one (1) year period."[14]

*Discussion*

Before getting to the issues as framed by the parties, a preliminary note is essential: Debtor seeks to avoid the judicial lien of Baralee, but Baralee does not have a judicial lien. While the Divorce Decree provides that certain sums will be paid to her

---

[13] The $125,000 figure has been indexed to $146,450.
[14] Murphy Objection at 2.

4

upon the sale of the Property, it does not grant her a mortgage or other security interest to secure that payment. Baralee holds an unsecured obligation against Debtor, and, whatever its nature, it is not a judicial lien.[15] To the extent that the Motion seeks relief against Baralee's judicial lien, it will be denied.

*The Property of the Estate Argument*

The Murphys assert that Debtor may not claim an exemption in the Surplus as the Surplus is not property of the estate. While acknowledging the breadth of 11 U.S.C. § 541(a), they contend that 11 U.S.C. § 541(d) "specifically excludes this Surplus." Their reasoning may be extracted from their objection as follows:

> [W]hen the foreclosing mortgagee has foreclosed and is holding a surplus, the mortgagee becomes trustee of the surplus funds for the benefit of junior lienholders. *First Colonial Bank for Savings v. Bergeron*, 646 N.E.2d 758, 759 (Mass. App. Ct. 1995), The mortgagee, however, is not entitled at that point to any property interest in the surplus until the satisfaction of junior lienholders. *Bergeron, id.* Because the foreclosure occurred prior to the Debtor having filed this case, the proceeds from the foreclosure sale became *in custodia legis* upon the filing of the interpleader action on January 4, 2012, again, prior to the instant case. *See, Davis v. Mazzuchelli*, 238 Mass. 550, 556 (1921) (receivership).
>
> Where the funds are held *In custodia legis*, the claimant is divested of legal title and left with only a contingent right to the funds; under those circumstances, such property, except the contingent interest, is not "property of the estate" under 11 U.S.C. 541(d). . . . Accordingly, Debtor may not claim an exemption in the Surplus because the Surplus, except a contingent remainder is not property of the estate.[16]

Frankly, I do not understand the argument. Even if I were to assume for purposes of argument that Debtor's interest in the Surplus is only a contingent

---

[15] "The term 'judicial lien' means a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). "The term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).
[16] Murphy Objection at 2-3.

5

remainder interest, that interest would still be property of the estate.[17] I have carefully reviewed the Massachusetts cases cited and find nothing there inconsistent with this view. Each of them addressed the rights of persons other than the mortgagor in the funds and not the issue before me. *Bergeron* merely held that a junior mortgagee had an equitable lien on the sale surplus which it was entitled to enforce. *Davis* held that when funds were in the hands of a receiver, a levy upon the funds was illegal and void, which does not assist me at all. To some extent (and I need not decide to what extent at this point) the Surplus is property of Debtor's estate and hence may be the subject of a claim of exemption.

*The Existence of a Homestead Exemption*

Resolution of all of the matters before me depends in the first instance on whether Debtor is entitled to claim a homestead exemption in the Surplus. Prior to the recent overhaul of Chapter 188 of the General Laws, the Massachusetts homestead law did not provide a specific exemption for the proceeds of the sale of a homestead property. It was, however, recognized implicitly:

> [T]he date for determining if an exemption exists is the petition date and a valid exemption cannot be used to satisfy a prepetition claim even if the asset upon which the exemption is imposed is transformed into cash.[18]

The exemption was made explicit, but limited, by new Section 11(a):

> If a home that is subject to an estate of homestead is sold, whether voluntarily or involuntarily, taken or damaged by fire or other casualty, then the proceeds *received* on account of any such sale, taking or damage shall be entitled to the protection of this chapter during the following periods:

---

[17] *See* 1 William C. Hillman and Margaret M. Crouch, Bankruptcy Deskbook § 7:1 (4th ed. 2011), cases at footnote 7.
[18] Braunstein v. Leung (*In re* Leung), 385 B.R. 489, 494 (Bankr. D. Mass. 2008).

6

> (1) in the event of a sale, whether voluntary or involuntary, or a taking, for a period ending on the date on which the person benefited by the homestead either acquires another home the person intends to occupy as a principal residence or 1 year after the date on which the sale or taking occurred, whichever first occurs….[19]

The Murphys urge that Debtor has never "received" the Surplus and hence he cannot claim an exemption in it. This position raises an interesting issue --- what does "received" mean in the context of the section?

While there are a small number of Massachusetts cases defining the word for other purposes, those cases generally arise in a tax context and I believe are inapposite here.[20] The standard legal dictionary has no definition of "received."[21] The online dictionaries define the word only as "describing something that has been allowed or accepted," which does not fit the current problem at all. The most helpful definition of "receive", and one that I opt for, is "to come into possession of", the first definition of "receive" as a transitive verb in the Merriam-Webster online dictionary.[22] Since the Surplus is tied up in the state court interpleader action, Debtor has never come into possession of it and hence cannot claim a homestead exemption under the revised statute. I disagree with the Trustee's interpretation that the statute "does not require that the owner actually have received the proceeds".[23] I think that it does, as a contrary reading renders the word "received" superfluous.

---

[19] M.G.L. c. 188, §11(a) (emphasis added).
[20] *See, e.g.*, State Tax Commission v. Fitts, 340 Mass. 575, 165 N.E.2d 586 (1960) (when did taxpayers receive dividends); Commissioner of Corporations v. Williston, 315 Mass. 648, 54 N.E.2d 43 (1944) (when was income received by taxpayer).
[21] Black's Law Dictionary 9th edition.
[22] *See* www.merriam-webster.com/dictionary/receive.
[23] Trustee's "Brief/Memorandum in Support of Objection to Debtor's Claim of Exemptions. Homestead Exemption," Docket No. 67

7

I have been told repeatedly by members of the bar that there is no legislative history of the revised statute and so we have no guidance as to what the legislature meant by "received." If I were to guess, and assuming that the legislature considered the problem at all, I would opine that it was not a literal meaning intended, but rather something like "the proceeds *to which the person benefitted by the homestead is entitled* on account of such sale", but I do not think that I have the authority to revise the language to accomplish that end. There is no ambiguity in the word "received." This is not a situation where, faced with contradictory interpretations of statutory language, I must choose between them and reject that which would lead to an unreasonable result.[24] Debtor urges that "surely the draftsmen of the new provision would not have intended to allow a foreclosing bank to determine a Debtor's rights in those proceeds by stalling."[25] I cannot guess what the draftsmen intended. The Supreme Judicial Court has adopted the standard rule that when the language of a statute is plain and unambiguous, it must be given its ordinary meaning.[26] While a literal interpretation of "received" is harsh as applied to this Debtor in these circumstances, I cannot find it to be so unreasonable or absurd that I have power to revise the language. A court must "resist reading words or elements into a statute that do not appear on its face."[27]

As Debtor had and has not received the Surplus, he is unable to claim a homestead exemption in it pursuant to M.G.L. c. 188, § 11.

---

[24] "It is a 'golden rule of statutory interpretation' that, as between competing statutory interpretations, the one that leads to an unreasonable result is rejected in favor of the one that leads to a reasonable result." Coffey v. County of Plymouth, 49 Mass. App. Ct. 193, 196, 727 N.E.2d 856, 859 (2000).
[25] Debtor's Response to the Objection of the Chapter 13 Trustee Concerning His Claim of a Homestead Exemption in Certain Foreclosure Sale Proceeds, Docket No. 53.
[26] Commonwealth v. Brown, 431 Mass. 772, 775, 730 N.E.2d 297 (2000).
[27] Dean v. U.S., 556 U.S. 568, 572 (2009).

*Conclusion*

For the reasons stated the objections to Debtor's claim of exemption are sustained and Debtors motion to avoid liens is denied. It is not necessary to reach the other objections raised.

_____
William C. Hillman
United States Bankruptcy Judge

August 14, 2012.

Counsel appearing:

Jeffery Johnson, Centerville MA, for debtor.
J. Alexander Watt, Barnstable MA, for Lance and Ruedee Murphy
Carolyn A. Bankowski, Boston MA, Chapter 13 Trustee